UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIGITTA RAINEY | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:01CV2109(SRU) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SHAUN B. CASHMAN, COMMISSIONER | : | |
| CONNECTICUT DEPARTMENT OF LABOR | : | |
| ET AL. | : | |
| *Defendants* | : | FEBRUARY 26, 2004 |

**DEFENDANT'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The plaintiff, Brigitta Rainey, filed a Complaint against Shawn Cashman, the Commissioner of the Department of Labor and Catherine J. Serino, the director of the State Board of Mediation and Arbitration, in their official and individual capacities. The plaintiff's complaint initial had seven counts. Count One, was based on 42 U.S.C. 1983; Count two was based on 42 U.S.C. 1981; Count Three was based on Title VII; Count Four was based on Conn. Gen. Stat. § 46a-60(a)(1); Count Five was based on Conn. Gen. Stat. § 46a-70; Count Six was based on Negligent Infliction of Emotional Distress and Count Seven was based on Intentional Infliction of Emotional Distress. The defendants filed a Motion to Dismiss which resulted in Counts Three, Four, Six and Seven being dismissed in their entirety, Counts Two and Five being dismissed against the defendants in their official capacities and Count One being dismissed against defendant Cashman in his individual and official capacity and defendant Serino in her official capacity.

On or about October 21, 2003, the plaintiff filed an Amended complaint in which she alleged a claim based on 42 U.S.C. 1983, Equal Protection, against Catherine Serino in her individual capacity; a claim based on 42 U.S.C. 1981 against both defendants in their individual capacities and a claim based on Conn. Gen. Stat.46a-70 against both defendants in their individual capacity.   The plaintiff claims that Ms. Serino treated her differently then her non-African American co-workers in failing to promote her to Secretary 2 and in her treatment of Ms. Rainey.  The defendants are filing this motion for summary judgment on all claims raised in the plaintiff's Amended Complaint

More specifically, the defendants request that summary judgment be entered in their favor on the following grounds: the plaintiff has failed to establish that she was treated differently then similarly situated individuals and the plaintiff was not qualified to be promoted to a Secretary 2 in response to her claim alleging a violation of 42 U.S.C. 1983; that there is no cause of action under 42 U.S.C. 1981 against state actors in their individual capacity and even if there was a cause of action the plaintiff has failed to allege or provide facts to support such a claim; and that the court should not exercise pendent jurisdiction of the plaintiff state law claim.

## FACTS

The Defendants' Local Rule 56(a)1 Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, submitted pursuant to Local Rule 56(a)1, constitutes the facts of this case.  Said Statement of Material Facts is incorporated herein by reference.

## LAW

**I.      Standard of Review**

A motion for summary judgment is granted when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986). The burden is on the moving party to demonstrate the absence of any material issue genuinely in dispute. American Int'l Group v. London American Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2512 (1986).

As this court has noted, the district court must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. . . Thus the question is whether the evidence can reasonably and logically give rise to of discrimination under all the circumstances." Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999).

Recently in the case of Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), the Supreme Court recognized that simply offering some evidence does not meet the burden of showing pretext. The court noted:

> For instance, an employer would be entitled to summary judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, **or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination has occurred.** (Emphasis added).

3

Id. Accordingly, the plaintiff must offer more than speculation or a difference in opinion about her abilities to perform the Secretary II position in order to prove a pretext for discrimination.

## II. PLAINTIFF FAILS TO STATE A PROPER EQUAL PROTECTION CLAIM AGAINST CATHERINE SERINO.

Count One of the plaintiff's complaint against Catherine Serino[1], in her individual capacity, claims that Ms. Serino subjected the plaintiff to disparate treatment and such disparate treatment was due to plaintiff's race, ethnic origin and gender in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

42 U.S.C. § 1983 provides, in relevant part that,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (internal citations omitted). Section 1 of the Fourteenth Amendment provides that

> [a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws.

---

[1]Plaintiff's 42 U.S.C. S 1983 Claims against defendant Shawn Cashman, in both his official and individual capacity, were dismissed by the Court in its Ruling on Defendants' Motion to Dimiss, dated September 24, 2002. See Court file (#23). The plaintiff was given 21 days to amend her complaint to allege "a good faith basis for believing that Cashman directly participated in the alleged discrimination." Id. The plaintiff did not file an Amended Complaint in 21 days and when she did file an amended complaint there were no factual allegations against Cashman.

4

"The Equal Protection Clause of the Fourteenth Amendment is violated when similarly situated persons are treated differently and that different treatment is not rationally related to a legitimate state interest." Black v. City of Auborn, Ala., 857 F.Supp. 1540, 1548 (M.D. Ala. 1994)(citation omitted.) "The Equal Protection Clause only guarantees like treatment to persons similarly situated. Id. (citation omitted.) "A person brining an action under the Equal Protection Cause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v. Dept. Of Health and Human Services, 716 F.2d 1167, 1171 (7th Cir. 1983).

> To establish a claim of unequal protection, plaintiff must establish that (1). . . compared with others similarly situated, [he] was selectively treated; and (2) that such selective treatment was based on [constitutionally] impermissible consideration. . . . [T]he equal protection clause does not provide a cause of action for every misapplication or arbitrary application of state law. . .. [T]he equal protection clause is primarily concerned with classes or groups, not individuals.   .   .  . [A] case invoking the equal protection clause, if it is to succeed, must allege something more than a tort, personal to the plaintiff. . . .Plaintiff must establish that he was in fact singled out for special treatment and that defendants took the action intentionally to discriminate against him because of his membership in a constitutionally identifiable group.

Gates v. Sicaras, 706 F.Supp. 169, 174 (D.Conn. 1989)(internal citations omitted). The Second Circuit Court of Appeals has held that for a plaintiff to establish that he was treated more harshly than "similarly situated" employees, not in the plaintiff's protected class, plaintiff must compare himself to individuals that are similarly situated in all material respects.

In terms of Ms. Rainey's claim that she was discriminated based on her sex, she has alleged no factual grounds to support such a claim. In fact, Ms. Rainey stated in her

5

deposition that there were no male secretarial or clerical staff at the State Board of Mediation and Arbitration. Local Rule 56(a)1 Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried, hereinafter SOF, ¶ 51. Ms. Rainey has also failed to make any factual allegation regarding her ethnic origin. Therefore, Defendants are entitled to a granting of their Motion for Summary Judgment based on any claim based on sex or ethnic origin.

The Plaintiff has also failed to demonstrate that she was selectively treated differently than similarly situated employees. At the time of the reclassification job upgrade of the clerical staff at the Board of Mediation and Arbitration, Ms. Rainey was the only Office Assistant. SOF, ¶'s 14 & 31. Ms. Rainey was promoted to Secretary 1 while the Secretary 1's were promoted to Secretary 2. SOF, ¶ 14.

Ms. Rainey also appears to be claiming that she should have been promoted to Secretary 2 when her probationary period for Secretary 1 was completed. None of the other Secretary 1's were promoted to Secretary 2 upon completion of their 6 month probationary period. Ms. Hernandez and Mary Serravalle was a Secretary 1 for almost 10 years, May 5, 1989 until April 8, 1999, before they were promoted to Secretary 2s. SOF, ¶'s 16 & 17. Myrlene Fay Krock was a Secretary 1 for four years, from March 31, 1995 until August 18, 1999, before she was promoted to Secretary 2., SOF ¶, 18. Suzanne Hinz was a Secretary 1 with the Department of Labor for 8 months, August 14, 1998 until April 1, 1999, prior to being promoted to Secretary 2. SOF, ¶ 19. Ms. Hinz also had six and a half years as a Secretary in her previous job. SOF ¶'s 24 & 25. The Secretary 1s who were reclassified to Secretary 2s were not automatically promoted at the expiration of their working test period, but were promoted because of the

6

reclassification of the entire clerical staff. SOF, ¶'s 11, 12 & 14. There is not automatic promotion to Secretary 2 when an individual completes their working test period. SOF ¶ 28.

Ms. Rainey also appears to be arguing that had she known Ms. Hinz's position would be promoted she would have applied for the position. First of all, Ms. Rainey did not apply for the position. SOF, ¶ 10. Even if Ms. Rainey had applied for the position as Mr. Hinz was hired for there is no guarantee she would have been hired over Ms. Hinz. Furthermore, even if Ms. Rainey had been hired she still would not have been eligible to be promoted to Secretary 2. SOF, ¶ 23. In order to be promoted through reclassification an individual must meet the minimum qualifications for the reclassified position as detailed on the job specification. SOF, ¶'s 20 and 21. The job specification for Secretary 2 provides that the candidate must have one year experience as a Secretary 1 or its equivalent. SOF, ¶ 22. Assuming arguendo, that Ms. Rainey had been hired instead of Ms. Hinz in August of 1998 she would not have had a year of experience as a Secretary 1 to be upgraded to a Secretary 2 when the reclassifications were approved on March 26, 1999. Ms. Hinz was reclassified to Secretary 2 because she had previous secretarial experience. SOF, ¶ 24 & 25.

It is also worth noting that while Ms. Rainey claims that Ms. Serino would not promote her because of her race Ms. Serino recommended Ms. Rainy for promotions which Ms. Rainey then received. In January of 1996 Ms. Serino recommended that Ms. Rainey be promoted from Clerk Typist to Office Assistant and Ms. Rainey was promoted to Office Assistant in June of 1996. SOF, ¶'s 8 & 9. In 1998 Ms. Serino requested that Ms. Rainey be promoted from Office Assistant to Secretary 1 and Ms. Rainey was

7

promoted in Arpil of 1999 to Secretary 1. SOF, ¶'s 11 & 15. Ms. Serino also recommended that Ms. Rainey be promoted to Secretary 2 when she felt Ms. Rainey has the necessary skills and she sent Ms. Rainey to various classes to help her get the skills. SOF, ¶ 33. Ms. Rainey was promoted to Secretary 2 effective November 30, 2001. SOF, ¶ 35.

The plaintiff has also alleged numerous other claims about how she has been discriminated. However, Ms. Rainey has not demonstrated that she has been treated differently then similarly situated employees. Ms. Rainey claims that Ms. Hinz yelled at her and when she started to yell back Ms. Serino told both individuals to stop. SOF, ¶ 37. Ms. Rainey claims that another individual was throwing files at her desk, but then says the person stopped after she told Ms. Serino and Ms. Serino spoke with the individual. SOF, ¶'s 38 & 39. Ms. Rainey claims that she was not allowed to go on flex time, but when she came back from maternity leave other employees where on flex time. SOF, ¶ 40. Ms. Serino stated that initially only individuals who were in car/van pools were allowed to use flex time, but after her employees continued to make request she changed her policy. SOF, ¶'s 41 & 42.

Ms. Rainey claims that she was moved to a different cubical, however, two other individuals were also moved. SOF, ¶ 43. Ms. Rainey claims that she was spoken to for going over to the Department of Corrections, a separate building from where she works for breakfast. SOF, ¶ 46. Ms. Serino stated that she did speak with Ms. Rainey because she was go to the Department of Corrections on unscheduled break time and that she was unaware of any other staff going to the Department of Corrections to get there breakfast.

SOF, ¶ 47. Ms. Rainey makes numerous claims that she was discriminated, but does not demonstrate how she was treated differently then similarly situated individuals.

Courts have stated that when reviewing Title VII discrimination claims that the court is charged with determining whether intentional discrimination occurred, and does not have a "roving commission to review business judgment." Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100, 106 (2d Cir. 1989) (internal citations omitted). Thus, the "fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose it to Title VII liability." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). See also, Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("It is not the function of a fact-finder to second-guess business decisions or to question an [employer's] means to achieve a legitimate business goal"); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985). Although these cases are from Title VII claims, the same rational should apply in reviewing business decisions under a 42 U.S.C. 1983, Equal Protection claim.

Accordingly, for all of the reasons stated above, summary judgment should be granted as to Count One of the plaintiff's Complaint.

**III.   THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S 42 U.S.C. 1981 CLAIM MUST BE GRANTED.**

**A.  42 U.S.C. 1983 Is The Exclusive Federal Remedy For Violations Of Rights Guaranteed By 42 U.S.C. 1981 Against State Actors.**

Count Two of plaintiff's Complaint which alleges a cause of action against the defendants in their individual capacities for violating 42 U.S.C. § 1981.  The plaintiff's exclusive right against the defendants, who are state actors, for violations of 42 U.S.C. § 1981 is 42 U.S.C. § 1983.  The defendants' motion for summary judgment should therefore be granted as to Count Two of the plaintiff's Complaint.

Section 1981 provides, in relevant part,

> (a)  All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens….
> (b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
> (c)  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981.  Subsections (b) and (c) were added as part of the 1991 amendments. Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).

In Count Two, Plaintiff has sued the defendants in their individual capacities for a violation of her rights guaranteed by Section 1981.  However, since the plaintiff's claims involve a "state actor," the plaintiff's exclusive remedy lies in her action under 42 U.S.C. § 1983.  Jett v. Dallas Independent School District, 491 U.S. 701, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989).  In Jett, the Supreme Court examined the relationship between §

10

1983 and § 1981 and concluded that Congress intended § 1983 to provide the exclusive federal damages remedy for violation of rights guaranteed by 42 U.S.C. § 1981 against state actors.

> The historical evidence surrounding the revisions of 1874 further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983.

Id. at 733-34.

In 1991, Congress amended section 1981 to include the phrase" the rights protected by this section are protected against . . . impairment under color of state law." Subsequently, plaintiffs have argued unsuccessfully to other Circuit Courts that the amendment to § 1981 overruled Jett. The Fourth, Fifth, Eighth and Eleventh Circuits have concluded that the 1991 amendments to § 1981 did not change the rule set forth in the Jett case. After examining the legislative history of the amendment, these circuits concluded that the purpose of the amendment was to clarify that § 1981 applies to nongovernmental entities, not to reverse or alter the holding in Jett. Felton, et al. v. Polles, et al., 315 F.3d 470 (5th Cir. 2002); Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001); Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Artis v. Howell North Band Booster Assoc., 161 F.3d 1178, 1181 (8th Cir. 1998); Dennis v. County of Fairfax, 55 F.3d 151, 156 n. 1 (4th Cir. 1995); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994).

The Second Circuit has recognized the ambiguity in § 1981(c) as amended in 1991, but has also stated that "of course, a claim against a state actor would have to be brought pursuant to 42 U.S.C. § 1983, which provides the 'exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" Anderson v.

Conboy, et. al, 156 F.3d 167, 176 n. 17, 178 n. 19 (2d Cir. 1998) citing to Jett, 491 U.S. 701, 733.  District Courts within the Second Circuit have held that 42 U.S.C. § 1983 provides the exclusive federal remedy for claims under § 1981.  Burbank II v. Office of the Attorney General, 240 F. Supp.2d 167 (D. Conn. 2003); Chadha, M.D. v. Conn. Medical Examining Board, et al., 1999 U.S. Dist. LEXIS 18939 (D. Conn. 1999) (attached hereto); Roddini v. City University of New York, 2003 U.S. Dist. LEXIS 2549 (S.D.N.Y. 2003) (attached hereto).

In Felton v. Polles, the Fifth Circuit determined that the Jett applied to state actors sued in either their official or individual capacity.  315 F.3d 470, 481-83 (5th Cir. 2002) citing to Oden v. Oktibbeha County, Miss., 246 F.3d 458 (5th Cir.), cert. denied, 534 U.S. 948 (2001).  Accord, Burbank II, 240 F.Supp.2d at 174-75.   The plaintiff's claim against the defendants in their individual capacities for violating 42 U.S.C § 1981 must therefore be dismissed.

**B. Even If The Court Finds That The Plaintiff Can Bring A Cause Of Action Under 42 U.S.C. 1981 Against A State Actor The Plaintiff Has Failed To Provide Facts To Support a Claim.**

Even if this court were to find that the plaintiff has standing to sue under § 1981, her claim fails to provide any allegation or evidence that any rights protected by 42 U.S.C. 1981 were violated.  To state a claim under § 1981, a plaintiff must allege (1) [that he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). Mian v. Donaldson, Lufkin & Jenrette Sec., Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  A § 1981 action must allege "that the defendants' act were purposefully

12

discriminatory ... and racially motivated." Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations omitted). The plaintiff has failed to provided any evidence that an action protected by 42 U.S.C. § 1981 was violated. The plaintiff has also failed to put forward any evidence to support her assertions that the conduct of the defendants Catherine or Cashman directed towards her was discriminatory or racially motivated. Abramowitz v. Inta-Boro Acres, Inc., 1999 U.S. Dist. LEXIS 2005 (E.D.N.Y. 1999).

In the Second Circuit, complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions ..." Hall v. Dworkin, 829 F. Supp. 1403, 1412 (N.D.N.Y. 1993)(citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987). Cf. Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978)("a complaint consisting of nothing more than naked assertions fails to state a claim"). Instead, "on a claim under § 1981, a plaintiff must show both that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship." Krulik v. Board of Educ. of City of New York, 781 F. 2d 15, 23 (2d Cir. 1986)(internal citations omitted).

For the reasons set forth Supra, pp. 4-9 of this brief, the plaintiff is unable to demonstrate that defendants Serino or Cashman violated her rights under a 42 U.S.C. § 1981 claim by intentionally discriminated against her. In fact, Ms. Rainey states that she suffered no disparate treatement from similarly situated non-African American, non-black employees because of race at the hands of Commissioner Cashman. SOF, ¶ 48. In fact Commissioner Cashman did not become Commissioner until January 16, 2001, well after most of the incidents of discrimination alleged by the plaintiff. SOF, ¶ 1.

Accordingly, the Court should grant the defendants' Motion for Summary Judgment on Count Two of the plaintiff's Complaint.

## IV.    THE PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS IS SUBJECT TO DISMISSAL ON THE GROUNDS OF QUALIFIED IMMUNITY.

The plaintiff's claims against the defendants, Catherine Serino and Shawn Cashman, for compensatory damages, punitive damages, cost and attorneys fees are barred by the doctrine of qualified immunity. The plaintiff's claims arise from the defendants official conduct as Commissioner of the Department of Labor, for Shawn Cashman and as Executive Director of the State Board of Mediation and Arbitration, for Catherine Serino. "The doctrine of qualified immunity shields public officials . . . From damages unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512, 114 S.Ct 1019 (1994).

Government officials performing discretionary functions are shielded from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have know." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), "Even where the permissible scope of activity is clearly defined, the qualified immunity defense protects an official if it was 'objectively reasonable' for him to believe his acts were lawful." Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987). If the right is so generalized that its application in the factual context of the case is subject to doubt, the immunity defense will bar action against the official. Anderson v. Creighton, 483 U.S. At 639; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Giacalone v. Abrams, 850 F.2d 79, 84 (2d Cir. 1988). As the United States Supreme Court stressed in Mitchell, "[t]he entitlement is an immunity from suit rather than a mere defense to liability, and . .

14

.is effectively lost if a case is erroneously permitted to go to trial." Id. (emphasis added.) The Supreme Court has expressly encouraged the use of summary judgment to quickly extricate government officials from the burdens of defending against insubstantial suits. Kaminsky v. Rosenblum, 929 F.2d at 925; Harlow v. Fitzgerald, 457 U.S. At 815-16.

Qualified immunity is considered separate and apart from the merits of the case, even though plaintiff's factual allegations must be examined in resolving the immunity defense. Kaminsky v. Rosenblum, 929 F.2d at 925. Qualified immunity is defeated only when "an official knew or reasonably should have known that the action he took within his sphere of official responsibility would isolate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a depreciation of constitutional rights or other injury." Harlow v. Fitzgerald, 457 U.S. At 815. (citations omitted.)

Catherine Serino requested that the plaintiff's position be reclassified from Office Assistant to Secretary 1. At the time Ms. Serino made the reclassification request she was told the Office Assistant would be upgraded to Secretary 1, but there was a question as to whether the Secretary 1's should be promoted to Secretary 2's. SOF, ¶ 13. Ms. Serino also did not recommend Ms. Rainey for promotion until she felt Ms. Rainey had the necessary skills to be a Secretary 2. SOF, ¶ 33. The actions taken by Ms. Serino surrounding Ms. Rainey's promotions were not taken in a way in which the defendant knowingly violated the constitutional rights of the plaintiff. The other actions taken by Ms. Serino outlined above, Supra, p 8., were also so lawful and related to Ms. Serino's duties as Director of the State Board of Mediation and her responsibility to run an office. Ms. Serino also did not take any action with the malicious intent to cause a deprivation of a constitutional right or other injury. Therefore, Ms. Serino is entitled to qualified immunity on Counts One and Two of the plaintiff's Complaint.

Commissioner Cashman is also entitled to qualified immunity on Count Two of the plaintiff's Complaint on the grounds that for most of the issues raised by Ms. Rainey

15

he was not even Commissioner of the Department of Labor. There is no allegation made that Shawn Cashman violated the constitutional rights of Ms. Rainey or that he took any action with the malicious intent to cause a deprivation of a constitutional right or other injury.

**V.    THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AS TO THE PLAINTIFF'S STATE LAW CLAIMS.**

**A. The Court Should Not Exercise Pendant Jurisdiction Over The Plaintiff's State Law Claim.**

Plaintiff asserts one state statutory cause of action against the defendants in their individual capacity based on Conn. Gen. Stat. 46a-70. Assuming judgment enters for the defendants on the federal claims discussed above, the Court should not avail itself of jurisdiction over the state law claims based on the principle of comity discussed in Penhurst State School & Hospital v. Halderman, 465 U.S. 118, 104 S. Ct. 900 (1984). Allowing claims against state officials based on state law to be brought in federal court does not necessarily foster the policies of "judicial economy, convenience and fairness to litigants." Penhurst, 465 U.S. at n.32.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully submit that there is no genuine dispute as to all the material facts and they are entitled to summary judgment as a matter of law on all Counts of the plaintiff's Complaint.

                DEFENDANTS

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL


BY:_____
    Maria C. Rodriguez
    Assistant Attorney General
    55 Elm Street, P.O. Box 120
    Hartford, CT 06141-0120
    Tel.: (860) 808-5340
    Fax: (860) 808-5383
    E-mail :
    Mariac.Rodriguez@po.state.ct.us
    Federal Bar No. ct 08946


## **CERTIFICATION**

I hereby certify that a copy of the foregoing Defendant's Memorandum of Law In Support of Motion For Summary Judgment was mailed this 26th of February, 2004, first class postage prepaid, to:

Christine E. Corriveau, Esq.
Miniter and Associates
147 Charter Oak Avenue
Hartford, CT 06106
Tel.: (860) 560-2590
Fax.: (860) 560-3238


_____
Maria C. Rodriguez
Assistant Attorney General