UNITED SATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIGITTA RAINEY<br>　　Plaintiff | :<br>:<br>: |
| v. | : CIV. NO. 3:01CV2109(SRU)<br>:<br>: |
| SHAUN B. CASHMAN, COMMISSIONER,<br>CONNECTICUT DEPARTMENT OF LABOR,<br>CATHERINE J. SERINO, IN THEIR<br>INDIVIDUAL CAPACITIES<br>　　Defendants | :<br>: April 28, 2004<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S OBJECTION TO SUMMARY JUDGMENT**

**INTRODUCTION:**

The Plaintiff requests that the Court deny the Defendant's Motion for Summary Judgment for the reasons herein contained.

**FACTS**

Plaintiff has been employed by the State of Connecticut, Department of Labor, Board of Mediation and Arbitration (hereinafter "the Board") since August, 1994. Affidavit of Brigitta Rainey ¶1.

In March, 1999, Plaintiff was employed as an Office Assistant by the Board. At said time, Plaintiff became aware that the Board had a Secretary I position open, a position that offered greater pay and responsibilities than the position then held by Plaintiff. Affidavit of Brigitta Rainey ¶2. Defendant Catherine J. Serino, Director of the Board was aware that Plaintiff intended to post for the Secretary I position, and offered to upgrade Plaintiff's Office Assistant position. Based on Serino's representations, Plaintiff did not post for the Secretary I position. Affidavit of Brigitta

Rainey ¶3.

The Board, acting through defendant Serino, hired a Caucasian individual, Suzanne Hinz, to fill said Secretary I position. In or around April, 1999, defendant Serino stated at an interdepartmental meeting that the Secretary I position aforementioned filled by Ms. Hinz would not be upgraded to level II. Affidavit of Brigitta Rainey ¶4. In or around June, 1999, plaintiff became aware of a Secretary I position open with the Board. Affidavit of Brigitta Rainey ¶5.

Plaintiff applied to transfer to said position, and said transfer was approved without Plaintiff requesting an upgrade to level II, in June, 1999. Affidavit of Brigitta Rainey ¶6. In or around September, 1999, at the end of her six month probation period, Ms. Hinz was upgraded to a level II position, with a corresponding upgrade of pay, despite defendant Serino's statement that said upgrade would not be made. Affidavit of Brigitta Rainey ¶7.

Plaintiff's six month probation period was completed in December, 1999, but plaintiff was not upgraded to a level II status as had been Ms. Hinz. Affidavit of Brigitta Rainey ¶8. The Plaintiff has completed several programs and earned certificates in the Secretarial sciences. In 1989, she completed a course in Word Processing and Office Procedures at TCU Manpower Training Program in Washington DC. In 1995, she received a certificate from Middlesex Community College in Secretarial Science. In 1996, she received a Certificate for completing a program in WordPerfect Windows 6.1 Level 3. Affidavit of Brigitta Rainey ¶16. Based on the her education and work experience, the Plaintiff would have been eligible to become a Secretary II at the time of the reclassification notice on March 25, 1999. Affidavit of Brigitta Rainey ¶17.

In or around February, 2000, plaintiff requested via email from defendant Serino an upgrade to a level II position. Defendant Serino failed to comply with said request. Affidavit of Brigitta

Rainey ¶9.

Plaintiff's job performance evaluations were all greater than satisfactory, and plaintiff successfully completed her probation period at her stated position. Affidavit of Brigitta Rainey ¶10.

Plaintiff contends that Defendant Serino treated Plaintiff differently than Plaintiff's non-African American, non-black co-workers in that since 1995, Plaintiff suffered verbal abuse and other unfair treatment at defendant Serino's hands. Affidavit of Brigitta Rainey ¶11.

On many, many occasions, Catherine Serino verbally abused the Plaintiff in front of her co-workers. Serino does not criticize non-African American co-workers. Affidavit of Brigitta Rainey ¶12.

For example, on occasion the Plaintiff went to the Department of Corrections to get something to eat. One day, when she returned, Serino yelled at her in front of her co-workers and told her she could no longer do that. The severity of the criticism, coupled with the openness in front of her co-workers, is an example of how Plaintiff is treated differently by Serino. Affidavit of Brigitta Rainey ¶13.

In addition, Defendant Serino does not intervene when Plaintiff's co-workers verbally abuse her, but she intervenes immediately when the Plaintiff attempts to stand up for herself. Affidavit of Brigitta Rainey ¶14.

Plaintiff contends that Defendant Cashman knew or should have known of ongoing discrimination as aforesaid and failed to remedy the wrong, having occupied a position where he is required to do so. Affidavit of Brigitta Rainey ¶15.

**ARGUMENT:**

**I.   STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the granting of a summary judgment motion if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of summary judgment is to determine whether a trial will be necessary. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48 (1986).  However, "[t]he [Plaintiff's] burden of establishing a prima facie case... is not onerous" Fisher v. Vassar College, 114 F.3d. 1332 (2d. Cir. 1997) citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  In fact, Plaintiff's burden of establishing a prima facie case of discrimination has frequently been described as "minimal." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

**II.   PLAINTIFF MAKES A VALID EQUAL PROTECTION CLAIM AGAINST SERINO UNDER 42 U.S.C. §1983**

Plaintiff concedes that there are no similarly situated male employees and that she cannot make a claim based on her sex.  She also has no specific allegations concerning her ethnic origin. However, Plaintiff has a valid equal protection claim based on her race.

To establish a claim of unequal protection, plaintiff must establish that "(1) . . . compared with others similarly situated, [he] was selectively treated; and (2) that such selective treatment was based on [constitutionally] impermissible considerations." LeClair v. Saunders, 627 F.2d 606, 609 (2d Cir.1980).

The Plaintiff contends that she was treated differently than her non-African American co-workers, in that since 1995, Plaintiff suffered verbal abuse and other unfair treatment at defendant

Serino's hands. On many, many occasions, Catherine Serino verbally abused the Plaintiff in front of her co-workers. Serino does not criticize non-African American co-workers.

For example, on occasion the Plaintiff went to the Department of Corrections to get something to eat. One day, when she returned, Serino yelled at her in front of her co-workers and told her she could no longer do that. The severity of the criticism, coupled with the openness in front of her co-workers, is an example of how Plaintiff is treated differently by Serino.

In addition, Defendant Serino does not intervene when Plaintiff's co-workers verbally abuse her, but she intervenes immediately when the Plaintiff attempts to stand up for herself. Plaintiff can establish that she was selectively treated by Serino.

Plaintiff is the only African American female employed at the Department of Labor under Ms. Serino's control. She is similarly situated to all other workers in all other ways. Such selective treatment can only be based on the constitutionally impermissible considerations of Plaintiff's race.

Plaintiff also believes that she was selectively treated when the reclassification occurred. Ms. Serino convinced the Plaintiff not to apply for a Secretary I position because she was going to promote her within the Department. Relying on Ms. Serino's assurances, Ms. Rainey did not apply for the job. The jobs were then all reclassified and everyone was raised a level. Had Ms. Rainey received the Secretary I job, she could have been upgraded to a Secretary II.

The Defendants argue that Ms. Rainey could not have been eligible for a Secretary II position because she had not been a Secretary I for a full year at the time of the reclassification. However, substitutions can be and are routinely applied. The relevant portion of the job description for a Secretary II reads as follows:

<u>EXPERIENCE AND TRAINING</u>

<u>General Experience</u>: Three (3) years experience above the routine clerk level in office support or secretarial work.

<u>Special Experience</u>: One (1) year of the General Experience must have been as a Secretary I or its equivalent.

<u>Substitution allowed</u>: College training in the secretarial sciences may be substituted

>for the General Experience on the basis of fifteen (15) semester hours equalling one-half (1/2) year experience to a maximum of two years.

Attachment J to the Affidavit of Thomas Malecky, filed by the Defendants.

The Plaintiff had completed several programs and earned certificates in the Secretarial sciences. In 1989, she completed a course in Word Processing and Office Procedures at TCU Manpower Training Program in Washington DC. In 1995, she received a certificate from Middlesex Community College in Secretarial Science. In 1996, she received a Certificate for completing a program in WordPerfect Windows 6.1 Level 3. See Affidavit of Brigitta Rainey ¶16. Based on her education and work experience, the Plaintiff would have been eligible to become a Secretary II at the time of the reclassification notice on March 25, 1999 if substitutions were allowed.

### III. THE COURT SHOULD DENY THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE 42 U.S.C. 1981 CLAIM.

**A. Plaintiff's 42 U.S.C. 1981 is valid against state actors.**

The Defendant argues that 42 U.S.C. §1983 provides the exclusive federal remedy for violation of the rights guaranteed by §1981 when the claim is pressed against a state actor." See Jett v. Dallas Independent School District, 49 U.S. 701, 735 (1989). However, Jett is outdated and may no longer be good law. Jett is a decision from the year 1989. In 1991, the Civil Rights Act was amended and paragraph (c) was added to §1981. 42 U.S.C. §1981 states:

>(c)   **Protection against impairment**
>
>The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State Law.

In Section 3 of Pub.L. 102-66, Congress explained the purpose of the 1991 Amendments to the Civil Rights Act:

6

**Purposes for the 1991 Amendments:** ...
(4)    to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.

Thus, the findings in Jett are called into question by the changes to the statute. "Section 1981(c) may be ambiguous as to whether it creates an implied private right of action against state actors under Section 1981, statutorily overruling Jett v. Dallas Independent School District, 491 U.S. 701 (1989), which held that 42 U.S.C. §§1983 provides the exclusive federal remedy against municipalities for violation of the rights set forth in Section 1981(a)." Anderson V. Conboy, 156 F.3d 167 n.19 (2nd Cir. 1998). It is the Plaintiff's position that she has a valid 42 U.S.C. § 1981 claim against the defendants, in that the findings in Jett have been statutorily overruled.

All of the cases cited by the Defendants in their brief are from different circuit courts or from District Courts. This court is not compelled to follow these decisions as they are only arguably persuasive authority in this circuit, not binding precedent. *See* Brown v. Ashcroft, 360 F.3d 346, n.7 (2nd Cir. 2004). The Plaintiff believes because of this, this Count must survive summary judgment.

**B. Plaintiff makes a prima facie case**

"To establish a claim under §1981, a plaintiff must allege facts in support of the following elements: 1) the Plaintiff is a member of a racial minority, 2) an intent to discriminate on the basis of race by the Defendant and 3) the discrimination concerned one or more of the activities enumerated in the statute." Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085 (2d Cir. 1993). The Plaintiff can meet this test.

There is no question that the Plaintiff is an African American female, and as such she is a racial minority and meets the first prong of the test.

It has also been held unequivocally that §1981 affords a federal remedy against discrimination in employment on the basis of race. *See* Johnson v. Railway Express Agency, 421 U.S. 454, 459-60 (1975); Runyon v. McCrary, 427 U.S. 160, 172 (1976); Rivers v. Roadway Express, Inc., 511 U.S. 298, 314 (1994), so Plaintiff can easily meet the third prong of the test.

In order to meet the second prong of the test, Plaintiff must show an intent to discriminate on the basis of race by the Defendant. Plaintiffs may allege a "'purposeful and systematic discrimination' by specifying instances in which they were 'singled ... out for unlawful oppression' in contrast to others similarly situated." Albert v. Carovano, 851 F.2d 561 (2nd Cir. 1988), *citing* Birnbaum v. Trussell, 347 F.2d 86, 90 (2d Cir. 1965).

Plaintiff has cited many instances where she was singled out and treated differently than other employees. For instance, when the Plaintiff requested flex time from Ms. Serino, it was denied. However, after other employees asked for flex time, Ms. Serino changed her policy. See Deposition of Brigitta Rainey ("Dep.") at 67. Ms. Serino raised her voice when speaking to Plaintiff in front of other employees. Ms. Serino never raised her voice when she spoke to non-African American employees. See Dep. at 68, 78-79. Ms. Serino allowed the Plaintiff's co-workers to yell at her and only intervened when Plaintiff defended herself. Dep. at 80-81.

There are other numerous incidents wherein the Plaintiff felt she was singled out and treated differently. For example, on one occasion, while the Plaintiff was speaking to Serino, the Plaintiff stated "I'm not going to let this department treat me like a dog." Serino responded "I'm sorry you feel like a dog." See Dep. at 89. These incidents are factual in nature, and therefore this is not appropriate for summary judgment.

**IV.     THE DEFENDANTS SHOULD NOT BE GIVEN QUALIFIED IMMUNITY.**

"Government officials performing discretionary functions are shielded from personal liability 'Insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'" Magnotti v. Kuntz, 918 F.2d 364 (2d Cir. 1990) *citing* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A public officer is not shielded with

qualified immunity when the officer should have known "that the action he took within the sphere of official responsibility would isolate the constitutional rights of the Plaintiff, or if he took action with the malicious intention to cause a depreciation of constitutional rights or other injury." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The doctrine of qualified immunity "evolved as a balance between the need on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury." Kaminsky v. Rosenblum, 929 F.2d 922 (2d Cir. 1991), *citing* Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949).

In the case at bar, the Defendants were not acting in their capacity as public officials, but as the employer of the Plaintiff. There should be no immunity when the public official is not acting as a public officer. Nor was the job of Ms. Serino of a discretionary nature. She was merely a supervisor. She did not have to make split second decisions the way a police officer must. She was just one of many state employees who are subject to the federal laws against discrimination.

In addition, Ms. Serino had to have known her differential treatment of the Plaintiff was constitutionally unacceptable. Ms. Serino verbally abused the Plaintiff by criticizing her in front of co-workers, when it is clear that Ms. Serino did not treat non-African American workers in the same manner. It can be inferred that Ms. Serino did this knowingly, and therefore with the malicious intention to cause a depreciation of the Plaintiff's constitutional rights or other injury to her reputation and status.

**CONCLUSION:**

For the foregoing reasons, the Plaintiff requests that the Court deny the Defendant's Motion

for Summary Judgment.

                                            PLAINTIFF


                                  By_____
                                     Francis A. Miniter, Esq. ct09566
                                     Miniter and Associates
                                     100 Wells Street Unit 1-D
                                     Hartford, CT 06103
                                     Tel. (860)560-2590
                                     Fax (860) 560-3238

<u>CERTIFICATION</u>

      I hereby certify that a copy of the foregoing was mailed to the following this _____ day of April, 2004:

Maria C. Rodriguez
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

                                                _____
                                                Francis A. Miniter